United States District Court
for the
Southern District of Florida

| | |
|---|---|
| In re: ) | |
| ) | |
| SAM Industrias S.A.; ) | |
| HMD America, Inc., f/u/b/o ) | |
| Boulder Participações, Ltda.; and ) | |
| Daniel Bensayag Birmann, Debtors ) | Civil Action No. 23-23019-Civ-Scola |
| in a Foreign Proceeding. ) | |
| ) | |
| Bruce Hood, and others, ) | |
| Appellants, ) | Bankruptcy Case No. 18-23941-RAM |
| ) | |
| v. ) | |
| ) | |
| Carlos Magno, Nery e Medeiros ) | |
| Sociedade de Advogados, Appellee. ) | |

## Order

This matter is before the Court on the Appellants' notice of appeal of, or alternatively, the Appellants' motion for leave to appeal, a Bankruptcy Court discovery order. Specifically, non-parties to a Chapter 15 bankruptcy proceeding ("Appellants") seek to appeal an order compelling the production of several documents that the Bankruptcy Court determined are privileged but disclosable under the crime-fraud exception to the attorney-client privilege. (Order of the Bankruptcy Court, ECF No. 9-1, 653 B.R. 196 (2023)), hereinafter "BR Order.") The Appellants filed a motion for leave to appeal (ECF No. 1) and a motion for clarification and/or determination regarding finality of appeal (ECF No. 9). The Foreign Representative Appellee responded to each (ECF Nos. 16, 17), and the Appellants replied (ECF Nos. 19, 20). The Foreign Representative Appellee also filed a motion to dismiss the appeal (ECF No. 22), to which the Appellants responded (ECF No. 23), and the Appellee replied in further support of its motion (ECF No. 26).

The Court has considered the extensive briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons discussed below, the Court concludes that the Bankruptcy Court's order is not appealable as of right or as an interlocutory order, therefore **granting** the Appellee's motion to dismiss (**ECF No. 22**) and **denying** the Appellants' motion for leave to appeal. (**ECF No. 1**.)

### 1. Background

This bankruptcy proceeding is the U.S. ancillary to a principal proceeding taking place in Brazil. The Brazilian proceedings began on January 8, 2007, when a creditor filed an involuntary bankruptcy petition against SAM Industrias S.A., Boulder Participações, Ltda., and the companies' principal, Daniel Bensayag Birmann. (BR Order at 204.) The Brazilian court ordered SAM's liquidation and extended the decree to Birmann. (*Id.* at 205.) Various orders of the Brazilian court detailed Birmann having "transferred his assets and used his family members, [a] trust, and offshore companies to conceal his assets" from creditors. (*Id.* at 206-07.)

Pursuant to Chapter 15 of the Bankruptcy Code, U.S. bankruptcy courts may recognize foreign bankruptcy proceedings and serve in a supportive role to ease the complexities of cross-border insolvencies. On November 8, 2018, the judicial administrator of the foreign bankruptcy estate (the "Foreign Representative" or "FR"), Carlos Magno, Nery e Medeiros Sociedade de Advogados, filed a Chapter 15 petition for recognition of the Brazilian bankruptcy case as a foreign main proceeding, which the Bankruptcy Court granted. (*Id.* at 208.) The FR issued Rule 2004 Examination requests for documents to the non-party Appellants, Bruce Hood, Withers Bergman LLP, and Wiggin and Dana LLP, in 2019 and 2020. (*Id.*) Hood had served as counsel for Daniel Birmann and as an officer of several Birmann-controlled companies in the United States, and he worked at Withers Bergman LLP and Wiggin and Dana LLP during the course of his representation of Birmann. (*Id.* at 205.) The FR moved to compel production from Hood and the law firms in 2020, and the Bankruptcy Court ordered production of the responsive documents accompanied by a privilege log of documents withheld. (*Id.* at 208.) The FR filed a second motion to compel, which in relevant part sought production of documents that Appellants withheld under the attorney-client privilege. (*Id.* at 209.) The Bankruptcy Court conducted a hearing and ordered the Appellants to file a sur-reply and submit the documents for in camera review. (*Id.*) Following the hearing, the Bankruptcy Court reviewed the documents in camera and concluded that the communications in the documents contained legal advice, but that the FR had made a prima facie case that the crime-fraud exception to the attorney-client privilege applied to some of the communications, justifying their disclosure. (*Id.* at 210-11.)

The Appellants filed two notices of appeal: one as of right and one motion for leave to appeal in the event that the Bankruptcy Court's decision could not be appealed as of right. The FR Appellee opposed both and separately filed a motion to dismiss the appeal.

## 2. Legal Standard

District courts function as appellate courts in reviewing decisions of the bankruptcy courts. 28 U.S.C. § 158(a); *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals "(1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees; of bankruptcy judges . . . ." 28 U.S.C. § 158(a).

## 3. Analysis

The Court first considers whether the Bankruptcy Court's order is a final order, before proceeding to consider whether other avenues for appeal are available. For the reasons discussed below, the Court concludes that (A) the Bankruptcy Court order is not a final order, (B) interlocutory appeal is not appropriate, and (C) no alternative grounds for appeal exist. Therefore, the order does not fulfill any of the grounds for appeal, and the Court is without jurisdiction to review the Bankruptcy Court's order.

### A. Whether the Bankruptcy Court order is a final, appealable order

"A bankruptcy case embraces an aggregation of individual controversies. Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (cleaned up). As the Eleventh Circuit has explained, "[i]t is therefore common for a bankruptcy court to resolve discrete disputes, thereby allowing separate appeals from discrete, controversy-resolving decisions, even while the umbrella bankruptcy case remains pending." *In re Transbrasil*, 860 F. App'x 163, 167 (11th Cir. 2021), *cert. denied sub nom. Est. of Fontana v. ACFB Administracao Jud.*, 142 S. Ct. 1229 (2022) (citing *Ritzen Grp.*, 140 S. Ct. at 586-87) (cleaned up). As such, a court considering whether an order in a bankruptcy case is final must "define" the "appropriate procedural unit for determining finality." *Id.* (cleaned up). "Correct delineation of the dimensions of a bankruptcy 'proceeding' is a matter of considerable importance. An erroneous identification of an interlocutory order as a final decision may yield an appeal over which the appellate forum lacks jurisdiction. Conversely, an erroneous identification of a final order as interlocutory may cause a party to miss the appellate deadline." *Ritzen Grp., Inc.* at 587.

The key disagreement between the parties here is whether the relevant procedural unit is the document production dispute that led to the Bankruptcy Court's July 26, 2023 order, or whether the relevant unit extends beyond that dispute and that the order granting the second motion to compel is merely "a first step" in the Chapter 15 proceedings. *See id.* at 589; *In re Transbrasil*, 860 F. App'x at 167. The Appellants argue that the Bankruptcy Court's order on the second motion to compel resolved the relevant proceeding—the discovery dispute between the Appellants and the Foreign Representative. They rely in large part on the 2013 Second Circuit opinion in *In re Barnet* analogizing discovery under 28 U.S.C. § 1782 to discovery under Chapter 15. *See* 737 F.3d 238, 244 (2d Cir. 2013). Section 1782 authorizes district courts to provide judicial assistance upon request for use in proceedings in foreign jurisdictions. *See In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007). The *Barnet* panel reasoned that discovery in both Section 1782 and Chapter 15 proceedings are "ancillary to a suit in another tribunal, such that there will never be a final resolution on the merits beyond the discovery itself." *Barnet*, 737 F.3d at 244. Section 1782 cases are limited to discovery because their entire purpose is to provide documents and other evidence to foreign courts, and it is well established that orders resolving discovery disputes are final orders in that context. *See In re Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1034 (11th Cir. 2017). According to the Appellants, just as would be the case in a Section 1782 discovery dispute, the second motion to compel is a final order because it "effectively disposes" of the proceeding against the Appellants and "there is no further controversy" after the resolution of the discovery dispute. (Mot. for Clarification, ECF No. 9 at 3.)

However, as the Foreign Representative notes, the Eleventh Circuit has declined to adopt *Barnet*'s reasoning categorically applying Section 1782's logic to Chapter 15 proceedings, especially in light of the Supreme Court's intervening *Ritzer Group* decision. In *In re Transbrasil S.A. Linhas Aereas*, the Eleventh Circuit affirmed the district court's dismissal of an appeal from the Bankruptcy Court for lack of subject matter jurisdiction, holding that Chapter 15 discovery orders are not always sufficiently similar to section 1782 orders to be considered final orders. 860 F. App'x at 166.

In identifying the relevant proceeding and thus the finality of the Bankruptcy Court's order, the *In re Transbrasil* panel stated that "discovery is merely a preliminary step' to obtain information for use in some other proceeding, and thus discovery disputes are nothing more than 'disputes over minor details about how a bankruptcy case will unfold." *Id.* at 167-68 (cleaned up) (quoting *Ritzen Grp., Inc.*, 140 S. Ct. at 590). Thus, "the appropriate procedural unit for determining finality is not the discovery dispute but the

proceeding for which the discovery is sought," which in that case was the implementation of a Brazilian court's order freezing assets. *Id.* at 168 (cleaned up). The Eleventh Circuit then concluded that the Appellants could not show based on the record that there was nothing left to do in the Chapter 15 proceeding, and failed to show that the Chapter 15 proceeding only contemplated discovery. *See id.* at 169.

The Court similarly concludes that the Appellants have not shown that the Bankruptcy Court has nothing left to do in these Chapter 15 proceedings, and the Bankruptcy Court's order on the second motion to compel is therefore not a final order. The parties' briefing does not specify the exact scope or purpose of the Chapter 15 proceedings, but the Court cannot rule out the possibility that relief like the freeze order in *Transbrasil* will be sought. The fact that "to date, the Foreign Representative has used the Chapter 15 proceeding only to seek discovery" says little about the ultimate direction of the proceedings. (*See* Mot. for Clarification, ECF No. 9 at 7.) Discovery with respect to the Appellants is not even complete (both parties acknowledge that a deposition of Appellant Bruce Hood remains outstanding), and according to the Appellee FR, it and the Bankruptcy Court have "more to do" beyond discovery. (Appellee's Mot. to Dismiss, ECF No. 22 at 10.) Although no order to freeze Debtor assets yet exists in this proceeding as it did in *In re Transbrasil*, the Foreign Representative claims that the purpose of the Chapter 15 proceedings is to locate and attempt to seize any assets that the Debtor has hidden in the United States and elsewhere. (*See* FR's Mot. to Dismiss, ECF No. 22 at 4.)

The Appellant also argue that any further proceedings related to the potential freezing and seizure of assets will not implicate them because they do not hold any of the relevant assets, but this fact does not change the analysis. (*See* Appellants' Mot. for Clarification, ECF No. 9 at 6.) The *Transbrasil* court did not require the Trustee/Appellee to show with absolute certainty that the discovery would be used to implement the freeze order—the panel was satisfied that "the Bankruptcy Court *may* be called upon to implement the Freeze Order based on the discovery at issue in the discovery orders." *In re Transbrasil*, 860 F. App'x at 168 (emphasis added). "Even assuming the Affected Parties are correct that the Freeze Order does not apply to their financial accounts, that does not mean the discovered information cannot be used in aid of implementing the Freeze Order. For instance, the discovered information could be used by the Trustee to locate other assets that are covered by the Freeze Order." *Id.* at 168 n.7. The same potential for future use of the discovered communications exists here, further supporting the Court's conclusion that the Bankruptcy Court's order did not end the relevant proceeding.

Finally, it is worth noting that parties seeking to appeal a decision denying attorney-client privilege typically must wait until a final judgment is entered *or* withhold the documents and wait to be held in contempt before they may appeal. *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325 (11th Cir. 2016). And furthermore, the Debtor and holder of the attorney-client privilege will be able to challenge the order upon the termination of the Chapter 15 proceedings. Certainly the relevant procedural unit for finality with respect to the *Debtor* in bankruptcy proceedings is not this discovery dispute. Because the Chapter 15 proceedings will end in a final order and the option to appeal a contempt order exists, the Court does not opt to expand the definition of final order for bankruptcy appeals here.

### B. Whether interlocutory appeal is appropriate

The Court also declines to review the Bankruptcy Court's order as an interlocutory appeal. Interlocutory review is generally disfavored, however, district courts may review a non-final bankruptcy court order if (1) it presents a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) immediate appeal would advance the ultimate termination of the litigation. *In re Pacific Forest Prods. Corp.*, 335 B.R. 910, 919 (S.D. Fla. Oct. 17, 2005) (Gold, J.). All three elements must be satisfied to justify interlocutory appeal. *Id.*

First, an interlocutory order involves a "controlling question of law" when it concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine" or "an abstract legal issue" that the reviewing court "'can decide quickly and cleanly without having to study the record.'" *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Brd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000)). Second, there is "substantial ground for difference of opinion" when the movant identifies other courts that are not "in complete and unequivocal agreement" as to the resolution of the controlling legal question. *See McFarlin*, 381 F.3d at 1258 (cleaned up) (quoting *Burrell v. Brd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). Last, an interlocutory appeal will "materially advance" the case when "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *See McFarlin*, 381 F.3d at 1259.

None of the three elements for interlocutory appeal are present here, and the Court therefore declines to exercise its discretion to review the order. First, the Appellants do not raise a "controlling question of law" under § 1292(b) and § 158(a)(3). The Appellants propose four issues for appeal:

- Whether it was permissible for the bankruptcy court to rely on non-final foreign decisions that are under appeal and are subject to being overturned as the basis for finding prima facie evidence sufficient for ordering the Appellants to produce otherwise privileged documents pursuant to the crime-fraud exception to attorney-client privilege;
- Whether the bankruptcy court could find, based on these non-final foreign decisions, prime facie evidence that the Foreign Debtor likely committed a crime or fraud in the main proceeding without affording the Foreign Debtor the opportunity to present evidence at an evidentiary hearing to rebut the findings?
- Whether the bankruptcy court, as an ancillary court vested with limited jurisdiction, has the authority to conduct an evidentiary hearing and ultimately make a merits determination that the Foreign Debtor likely committed a crime or fraud in the main proceeding when the foreign court in the main proceeding itself has not made that final determination in a non-final, non-appealable order; and
- Whether the Bankruptcy Court committed clear error by failing to properly consider the Appellants' assertion of work product protection for Log Entry No. 47? (Mot. for Leave to Appeal, ECF No. 1 at 5-6.)

As stated above, a "controlling question of law" is one involving an "abstract legal issue"—a question of "pure law"—the resolution of which does not require "rooting through the record." *See McFarlin*, 381 F.3d at 1258. "A question is controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases." *Samsung Semiconductor, Inc. v. AASI Liquidating Tr. ex rel. Welt*, 12-23707-CIV, 2013 WL 704775, at *5 (S.D. Fla. Feb. 26, 2013) (cleaned up) (Rosenbaum, J.). "The term 'question of law' does not mean the application of settled law to fact." *McFarlin*, 381 F. 3d at 1258.

In contrast, the issue statements for appeal that the Appellants propose can hardly be parsed without resort to the record, let alone resolved entirely. All four proposed questions for appeal concern the weight given by the Bankruptcy Court to facts that it used to make conclusions about the applicability of legal privileges to communications. These questions are not purely legal, nor would the answer to these questions resolve many (if any) disputes outside of the instant case. Ultimately, the Court cannot determine the appropriateness of the Bankruptcy Court's reliance on a Brazilian judicial decision as evidence that the communications in question fell into the crime-fraud exception, or whether the Bankruptcy Court erred by finding that the

Appellants waived a privilege with respect to one single privilege log entry, "without having to study the record," *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 824 (S.D. Fla. 2007) (Gold, J.). In the end, the Appellants have failed to state the issues "at a high enough level of abstraction to lift the question[s] out of the details of the evidence or facts of a particular case and give [them] general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d at 1259.

The Appellants' failure to pose controlling questions of law dooms the potential for interlocutory appeal, but the Appellants also do not identify disagreement amongst courts about these highly fact-bound determinations. The Appellants argue that the Bankruptcy Court does not cite "a ***single*** case in which an ancillary court (either in a Chapter 15 court, or a 1782 proceeding) relied on non-final, foreign decisions as a basis for ordering production of privileged documents under the crime-fraud exception." (Mot. for Leave to Appeal, ECF No. 1 at 10-11 (emphasis in original).) However, simply pointing out that other courts have not made exactly the same decision in the exact same, incredibly specific procedural setting does not establish disagreement amongst courts. *See Havana Docks Corp. v. Carnival Corp.*, No. 19-CV-21724, 2020 WL 3489371, at *2 (S.D. Fla. June 26, 2020) (Bloom, J.) ("[Q]uestions of first impression or the absence of binding authority on an issue, without more, are insufficient to demonstrate a substantial ground for difference of opinion.").

Finally, allowing an interlocutory appeal of the bankruptcy court order would not reduce the amount of litigation left in the case. The issues are highly specific to the Appellants and may not even speed up the remainder of discovery amongst the parties to the appeal, let alone the entire Chapter 15 case. The FR's efforts to obtain documents from the Appellants have already lasted years, and continuing appeals about the disclosure of a small number of remaining documents will not settle a recurring issue or expedite the proceedings in any way—quite the opposite. None of the elements justifying interlocutory appeal are present here, and the Court therefore declines to review the Bankruptcy Court order on that basis.

### C. Whether any alternative basis for appeal exists

The Appellants make two additional arguments—that even if the Bankruptcy Court order is not final or appealable under the typical interlocutory appeal analysis, this Court should still review the order under the collateral order doctrine or the *Perlman* exception. First, the Appellants argue that the Bankruptcy Court order is appealable under the collateral order doctrine because "legal questions regarding the crime-fraud exception and evidence required in support are appropriate grounds for interlocutory appeal

within this circuit." (Appellants' Reply re Mot. for Leave to Appeal, ECF No. 20 at 9 (emphasis in original).) The Court disagrees that the order falls into this category.

Only "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action" are immediately appealable as collateral orders. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). The Eleventh Circuit has also stated that "[t]he class of collaterally appealable orders must remain narrow and selective in its membership." *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1327 (11th Cir. 2016). "[D]iscovery orders generally do not present 'important questions' warranting collateral order review" and echoed the Supreme Court that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege." *Id.* at 1325 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) and *Mohawk*, 558 U.S. at 114). The Eleventh Circuit continued that "in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Id.*; *see also Ryan*, 402 U.S. at 532, 91 S.Ct. at 1581–82 ("[O]ne to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey."). Both options are available in this case, and the circumstances of this case are not sufficiently unique to escape the existing Supreme Court and Eleventh Circuit precedent. The Court therefore declines to review the Bankruptcy Court order under the collateral order doctrine.

Similarly, the *Perlman* exception, which allows an intervenor to file an interlocutory appeal of an order denying a motion to quash a subpoena, is inapplicable because both the Appellants and the holder of the privilege have other recourse for review of the Bankruptcy Order. *See Doe No. 1 v. United States*, 749 F.3d 999, 1004 (11th Cir. 2014). "Under *Perlman,* "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Id.* (quoting *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 18 n.11 (1992). First of all, the exception applies where an *intervenor* is appealing a disclosure order. That is not the case here, although the Appellants have added the Debtor's name to the briefing after the initial motion for leave to appeal was filed. Furthermore, the Appellants are not disinterested, which is a fundamental

requirement of the exception. The Appellants have expended significant resources already fighting the Bankruptcy Court's order since 2019. The *Perlman* exception therefore cannot apply in this case.

### 4. Conclusion

Because the Bankruptcy Court order was not a final order or an appealable interlocutory order, the Court lacks subject matter jurisdiction to review it at this stage. The Court therefore **grants** the Appellee's motion to dismiss (**ECF No. 22**) as this Court lacks jurisdiction to review the Bankruptcy Court's non-final July 26, 2023 order and **denies** the Appellants' motion for leave to appeal, finding it would be improper for the Court to exercise its discretion to grant the Appellants leave to seek interlocutory review of the Bankruptcy Court's discovery order. (**ECF No. 1**). The Clerk is directed to close this case. Any pending motions, if any, are denied as moot.

**Done and ordered**, at Miami, Florida, on December 5, 2023.

_____
Robert N. Scola, Jr.
United States District Judge